## ROBINSON vs. BROOKS.

[ACTION AT LAW BETWEEN CO-SURETIES FOR MONEY HAD AND RECEIVED.]

1. *Contribution between sureties.*—Where a joint demand exists in favor of two sureties against their principal, which one authorizes the other to sue for in their joint names, agreeing to pay one half of the expenses; and the other afterwards compromises the suit, without the assent of his co-surety, he is liable to the latter for one half of the amount realized from the claim, unless he shows that the latter's interest in the claim had been previously discharged or satisfied.

2. *Liability of agent to principal.*—Where a several demand exists in favor of two sureties, for money paid by them respectively on a judgment against them and their principal; and one undertakes, for a sufficient consideration, to act for the other in the collection of the claim, he thereby becomes bound, as an agent, to the exercise of good faith, reasonable skill, and ordinary diligence, and liable for any loss or injury occasioned by his want of either; but, if the principal has ratified or assented to the act of his agent, or has not been injured by it, he cannot maintain an action on account of it.

3. *General charge on evidence erroneous.*—A general charge in favor of either party, when there is the slightest conflict in the evidence, on any material point, is an invasion of the province of the jury.

Robinson v. Brooks.

APPEAL from the Circuit Court of Dale.

Tried before the Hon. C. W. RAPIER.

THIS action was brought by Thomas Robinson against Esau Brooks. The record contains nothing but the bill of exceptions and the judgment of the court; the former stating that, by consent of parties, the cause was tried without the summons and complaint, which had been lost or mislaid. The bill of exceptions purports to set out all the evidence which was offered on the trial, and which consists of the defendant's answers to interrogatories propounded by the plaintiff, (the interrogatories themselves are not set out,) and a letter written by defendant to plaintiff, dated Daleville, Ala., December 28th, 1851; both of which were offered in evidence by the plaintiff.

The letter referred to is in these words:

"Dear Sir: Agreeable to your request, I now proceed to inform you of my proceedings in the Carson case. The reason why I have not written to you before this, is, because I knew not what to write. In the first place, after I left Eufaula, I went to Cuthbert, and there employed William Taylor, a lawyer, to prosecute the case for us. He advised me to take out a bail-writ and summons of garnishment, which I proceeded to do. I then went down into the neighborhood where Carson was doing business, selling goods, where I made a friend, and succeeded in getting a list of thirty-eight names, supposed to be his customers. I then returned to Cuthbert, and had garnishments issued for the thirty-eight persons, put them in the hands of the sheriff, and told him to execute them in haste; with instructions to Taylor to push the case right ahead, and to inform me, as soon as possible, what was done. Last night I received a letter from Taylor, informing me that he had Carson held to bail. Mind you, I had the whole proceeding issued jointly in the names of Thomas Robinson and Esau Brooks; but when the sheriff brought Carson forward, he denied being one cent in your debt, and affirmed to Taylor that he had made over some land-certificates to you, and which, he said, you acknowledged satisfied all the demands which

you held against him; and that he would be able to establish these facts in law, and would do so, and offset the whole of your claim; but he acknowledged that, so far as one half of the claim is concerned which I paid on those Porter executions, he was still indebted to me, and proposed to turn over to Taylor notes on different individuals who were indebted to him, to satify my individual claim, but not one cent to you; provided Taylor would pay all costs, and stop the suit. Taylor informed me, that he thought the whole concern doubtful, and thought it best to compromise my interest, with a perfect understanding that your interest in the judgment was not settled or affected in the least by the compromise of my interest. Now, in conclusion, I will say to you, that if you wish to save your interest in the above named executions, you will have to commence anew; and the sooner the better, for there is danger in delay; and if you wish a transcript of the records of Barbour circuit court, you can get the same I showed to you, which will save you some expense. I am fearful you will not altogether like the compromise made by Taylor, which I neither recommended nor proposed. I have done the best that I could, as I thought, for us both."

The answers to the interrogatories were as follows:

"The amount of principal, interest and costs against Carson, which I carried to Randolph county, Georgia, to secure, was a few cents over $700, as well as I recollect. Robinson's interest was one half of the judgment and interest. Our interest arose in this way: We were bound on the same judgment, as sureties for Carson, for the whole amount; we paid two-thirds of the whole judgment to the plaintiff's attorney; and he gave us the control of the executions, to be used by us against Carson, to secure us in the repayment of the money so paid by us for him. In this way we were interested, and in this way we jointly paid the judgment as sureties of Carson.

"2. I found out where Carson lived in Georgia, and, in the hope of making my part of the money out of him, set out for Georgia. I met Robinson, who told me, if I would act for him in securing his part of the claim, he

would pay me for my trouble, and half my expenses; which I agreed to do. Robinson gave me a written power to act for him, which I have lost. I do not think I took Robinson's written obligation to pay half the expenses. These are the facts; and I answer this interrogatory by stating, that I was to take charge of the claims against Carson, and collect as much of them as I could; but I did not agree to give Robinson more out of the proceeds than I collected for him, as I did not feel bound to divide with him what I collected on my own account, and did not make such a contract with him.

" 3. I went to Georgia, and employed Judge Taylor to collect the claims. My lawyer bailed Carson, and served thirty garnishments on his customers. Carson then agreed to compromise, if I would pay the costs. To this my attorney agreed, and I ratified the act. Carson refused to pay one cent on Robinson's account, declaring that he had paid him in land in Henry county, Alabama; and hence my lawyer did not settle for Robinson, and refused to discharge Carson so far as Robinson was concerned, and left Robinson free to pursue his share by suit or otherwise. Robinson afterwards tried to employ Taylor to pursue his share, but did not succeed. I communicated all these facts to Robinson so soon as I learned them from my attorney, from whom I got all the above facts, as I was not present after the bail-writ was served. As to the amount collected I have to depend on the statement of my attorney." (The residue of this answer describes the notes received from Carson by Taylor, the amounts collected on them, &c.)

" This being all the evidence in the case, the court charged the jury, that, if they believed the evidence, they must find for the defendant; to which charge the plaintiff excepted," and which he now assigns as error.

L. L. CATO, and JAS. L. PUGH, for appellant.

E. C. BULLOCK, contra.

RICE, C. J.—There is some conflict in the evidence upon the following questions: 1st, whether the claim of

the plaintiff and defendant against Carson was a joint one in favor of both, or a separate one in favor of each; 2d, whether there was a want of good faith, reasonable skill, or ordinary diligence, on the part of the defendant, in relation to the commencement or termination of the suit in Georgia against Carson; 3d, whether any loss or damage resulted to the plaintiff from the commencement, compromise, or dismissal of that suit, or from any other act of the defendant in relation to the claim of the plaintiff against Carson.

If the demand on which that suit was founded, was a joint one, in favor of Robinson & Brooks against Carson; and if Robinson had authorized Brooks to commence it, and had agreed to pay him for his trouble and half his expenses; and if Brooks compromised and dismissed it without the assent of Robinson, he is liable to Robinson for a moiety of what he actually realized from the suit, unless it be proved that Robinson's interest or share in the joint demand had been in some way previously discharged or satisfied.

If the demand on which the suit was founded, was a several one—that is, if Brooks had paid money for Carson as his surety, and Robinson had paid money for Carson as the co-surety of Brooks; and if, upon a sufficient consideration, Brooks agreed to act for Robinson in securing Robinson's claim against Carson, he thereby became the agent of Robinson, and bound as such to good faith, reasonable skill, and ordinary diligence in the exercise of his functions, and, consequently, liable for injuries to his employer, occasioned by the want of such faith, skill, or diligence.—Story on Agency, §§ 182, 183, 186, 207, 208; Gliddon v. McKinstry, 25 Ala. 246.

If everything which Brooks, as agent for Robinson, has done in relation to Robinson's claim against Carson, was assented to, or has been ratified by Robinson, he cannot recover for anything done by Brooks as his agent. So, if no loss or damage has resulted to him from what Brooks did, he cannot recover. For instance, if it be proved that Robinson's claim against Carson was paid or discharged in any way before the commencement of the suit against

Carson in Georgia, Robinson is not entitled to recover. But the mere declarations of Carson to Brooks, or to his attorney, do not, in the present suit, prove any such payment or discharge. They are not admissible for any such purpose against Robinson.—Story on Agency, §§ 222, 226–235; Addison on Con. 612; Nicholls v. Wilson, 11 Mees. & Welsby, 106.

We do not intend to intimate any opinion as to the facts, nor how the jury should find as to them. That is a matter for the jury to determine, under proper instructions. As there is some conflict in the evidence as to some of the material facts, the court below erred, in charging the jury that, if they believed the evidence, they must find for the defendant. A general charge, that one party or the other is entitled to a verdict, is never proper, where is any conflict of evidence as to a material fact.—Browning v. Grady, 10 Ala. 999; Boyd v. McIvor, 11 Ala. 822.

All that we have above said must be confined to the case as presented by the bill of exceptions now before us. Upon the case as thus presented, there is error in the charge; and for that, the judgment is reversed, and the cause remanded.